**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MESA AIRLINES, INC., an Arizona Corporation,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>MIKE USLAN, an individual,<br><br>　　　　　Defendant. | No. CVO7-00178-PHX-JAT<br><br>**ORDER** |

Pending before this Court is Defendant Michael Uslan's ("Uslan") Motion to Dismiss For Lack of Jurisdiction (Doc. #11). Plaintiff Mesa Airlines, Inc. ("Mesa") filed a response to Uslan's Motion to Dismiss (Doc. #17). Uslan filed a Reply to Mesa's Response to his Motion to Dismiss (Doc. #18). Mesa filed a Surreply (Doc. #20), a Motion for Leave to File a Surreply (Doc. #21), and Supplemental Evidence in Support of Finding Personal Jurisdiction (Doc. #24). The Court now rules on the Motion to Dismiss.

**BACKGROUND**

Mesa filed its Complaint (Doc. #1) on January 24, 2007, alleging trademark infringement, unfair competition, false representations, descriptions and designation of origin, false advertising, and defamation by Uslan. Mesa is an Arizona corporation headquartered in Phoenix, Arizona, and, in 2006, created a new division called *go!* to provide commercial flights within the Hawaiian islands. (Compl. at ¶¶ 2,14-15). Mesa established a website for consumers of its *go!* division at http://www.iflygo.com. (Compl. at ¶ 16).

1    Uslan is a resident of the State of Hawaii employed as a pilot for Aloha Airlines, Inc. ("AAI"), a Delaware corporation with its principal place of business in Hawaii. (Declaration of Michael Uslan "Decl. Uslan" at ¶ 2).  Uslan has not visited Arizona or conducted any business with Arizona or its residents since 2003, and does not have bank accounts, personal property, or real property in Arizona.  (*Id.* at ¶¶ 3-4).  Uslan was identified as one of the organizing members of the group H.E.R.O., an acronym for "Hawaii's airline Employees Repelling Ornstein."  (Ex. 9).  "Ornstein" refers to Jonathan Ornstein, the Chief Executive Officer ("CEO") of Mesa's parent company, Mesa Air Group, Inc.  (Compl. at ¶ 22).

H.E.R.O., whose members' identities are unknown, with the exception of Uslan, is allegedly responsible for content posted on the website http://dontflygo.com.  (*Id.* at ¶ 4).  The website, which identifies *go!*'s affiliate, Mesa, as an Arizona corporation based in Phoenix, contains numerous accusations against Mesa and its employees.[1]  (Compl. at ¶¶ 35-40).  The website alleges that the airline mistreats its employees and ranks poorly in terms of customer satisfaction and safety.  (*Id.* at ¶¶ 44, 47-48, Ex. 11-12).  Visitors to the site are encouraged to fly on local airlines rather than *go!* based on claims that Mesa has not supported the Hawaiian community.  (*Id.* at ¶ 45, Ex. 9).  The website seeks visitors' complaints against Mesa, offers subscription to an e-mail list, enables downloads of "support materials," and solicits donations to support H.E.R.O.  (Decl. of Marissa Smith "Decl. Smith" at ¶ 10, Ex. 5).  Through a link from the website, visitors can purchase products bearing negative slogans regarding *go!*.  (Decl. Smith at ¶ 12, Ex. 7).  Content on the website implies Ornstein has engaged in illegal activity, and suggests that Mesa employees may have plotted to harm a H.E.R.O. member by removing lug nuts from his vehicle.  (Compl. at ¶¶ 39-40).

---

[1] The format and content of http://dontflygo.com has changed since May 23, 2007.  It is now titled "Go Airline, Mesa Airline, and Hawaii Interisland Airline News" and no longer contains the allegedly defamatory statements referred to in Mesa's complaint.

- 2 -

1  Initially, http://dontflygo.com was registered to Domains by Proxy ("DBP"), an
2  Arizona-based website hosting company that allows content providers to remain anonymous.
3  (Compl. ¶ at 24, Decl. Smith at ¶ 7). The website was taken down after DBP received a letter
4  from Mesa counsel requesting removal of content that allegedly infringed on Mesa's
5  trademark. (Compl. at ¶¶ 25-26). In November 2006 the website was reactivated in a new
6  format. (*Id.* at ¶ 27). Mesa counsel again wrote to DBP and asked for removal of the
7  allegedly infringing content and for the names of entities or persons responsible for the site.
8  (*Id.* at 28, Ex. 2). Subsequently, DBP ceased hosting the website; and a company in China
9  began to host the site. (Compl. at ¶¶ 29-30).

10 On November 17, 2006, a Pacific Business News article named Uslan as one of
11 H.E.R.O.'s organizers. (Ex. 9). Uslan alleges he is not the registered owner of the website
12 and does not manage or post content on the site. (Supplemental Declaration of Michael
13 Uslan "Supp. Uslan" at ¶ 2). He further alleges he does not receive economic benefits from
14 products sold on the site. (*Id.* at ¶ 3).

15 **ANALYSIS**

16 As a preliminary matter, the Court will address Plaintiff's Motion for Leave to File
17 Surreply (Doc. #21) and the document labeled Supplemental Evidence in Support of Finding
18 Personal Jurisdiction (Doc. #24). On May 14, 2007, Mesa filed a surreply in response to
19 Uslan's reply (Doc. #20), and subsequently, on May 15, 2007, Mesa filed for leave to file a
20 surreply (Doc. #21). Local rules do not allow for a surreply without leave of the court.
21 Local Rule Civ. Pro. 7.2. The Court denies leave to file the surreply and strikes the surreply
22 at Document #20.

23 On May 30, 2007, Mesa filed the Supplemental Evidence in Support of Finding
24 Personal Jurisdiction (Doc. #24). Mesa failed to seek leave of the Court to file the
25 supplemental evidence, as required by local rule. Local Rule Civ. Pro. 7.2. The filing of the
26 supplemental evidence is also untimely because Mesa had the letters contained in the
27 supplement at the time Mesa filed its response to the motion and its proposed surreply, but
28 failed to file the letters with either document.

1  The letters regarding settlement discussions Mesa submitted as supplemental
2 evidence were intended to be protected by Federal Rules of Evidence 408. Fed. R. Evid. 408
3 prohibits the admission of compromise negotiations between parties, in recognition of a
4 public policy in favor of settlements. *See Factor v. C.I.R.*, 281 F.2d 100 (9th Cir. 1960).
5 Generally, compromise negotiations are not admissible to prove liability, Fed. R. Evid. 408,
6 but Courts have also hesitated to consider settlement discussions as "contacts" to determine
7 jurisdiction. *See Digi-Tel Holdings, Inc. v. Proteq Telecommunications, Ltd.*, 89 F.3d 519,
8 524 (8th Cir.1996). While the Rules do not explicitly prohibit evidence of such negotiations
9 to establish personal jurisdiction, allowing evidence of compromise negotiations in this case,
10 even for purposes of jurisdictional determinations, would contravene the policy underlying
11 the Rule that favors settlements. *See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148
12 F.3d 1355, 1361 (Fed. Cir. 1998).

13  The Court will not consider the untimely and impermissibly filed supplemental
14 evidence. Even if the Court were to consider the supplemental evidence, the Court's
15 conclusion regarding jurisdiction would not change. The Court strikes the Supplemental
16 Evidence in Support of Finding Personal Jurisdiction at Doc. #24.

17 **I. Personal Jurisdiction**

18  The plaintiff bears the burden of establishing personal jurisdiction. *See, e.g., Ziegler*
19 *v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995) (citing *Farmers Ins. Exch. v.*
20 *Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990)). When a defendant
21 moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff is "obligated to
22 come forward with facts, by affidavit or otherwise, supporting personal jurisdiction" over the
23 defendant. *Cummings v. W. Trial Lawyers Assoc.*, 133 F. Supp. 2d 1144, 1151 (D. Ariz.
24 2001).

25  Because no applicable federal statute governing personal jurisdiction exists, Arizona's
26 long-arm statute applies to this case. *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 559
27 (9th Cir. 1995) (citing *Core-Vent Corp. AB v. Nobel Indus.*, 11 F.3d 1482, 1484 (9th Cir.
28 1993)). Arizona's long-arm statute provides for personal jurisdiction to the extent permitted

1 by the Due Process Clause of the United States Constitution. Ariz. R. Civ. P. 4.2(a); *see Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997).[2]

Absent traditional bases for personal jurisdiction (i.e. physical presence, domicile, and consent), the Due Process Clause requires that a nonresident defendant have certain minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Due Process Clause protects a defendant's "liberty interest in not being subject to the binding judgment of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *See Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269-70 (9th Cir. 1995) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985)).

In determining whether a defendant has minimum contacts with the forum state such that the exercise of jurisdiction over the defendant would not offend the Due Process Clause, courts focus on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). If a court determines that the defendant's contacts with the forum state are sufficient to satisfy the Due Process Clause, then the court must exercise either "general" or "specific" jurisdiction over the defendant. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-15 nn. 8-9 (1984). The nature of the defendant's contacts with the forum state will determine whether the court exercises general or specific jurisdiction over the defendant. *Id.*

**A. General Jurisdiction**

A court may assert general jurisdiction over a defendant "[i]f the defendant's activities in the state are 'substantial' or 'continuous and systematic,' . . . even if the cause of action is unrelated to those activities." *Doe*, 112 F.3d at 1050-51 (quoting *Haisten v. Grass Valley*

---

[2]Rule 4.2(a) provides, in pertinent part: "A court of this state may exercise personal jurisdiction over parties, whether found within or outside the state, to the maximum extent permitted by the Constitution of this state and the Constitution of the United States."

- 5 -

*Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986)). Mesa does not assert general jurisdiction over Uslan; therefore, the Court will determine only whether specific jurisdiction exists over Uslan.

### B. Specific Jurisdiction

The Court must determine whether Uslan has established sufficient contacts with Arizona such that the exercise of specific jurisdiction over him would not offend the Due Process Clause. *See Int'l Shoe*, 326 U.S. at 316. The Ninth Circuit applies a three-part test to determine whether a defendant's contacts with the forum state are sufficient to subject him to the state's specific jurisdiction. Under this three-part test, specific jurisdiction exists only if: (1) the defendant purposefully availed himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws, or purposefully directed conduct at the forum that had effects in the forum; (2) the claim arises out of the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is reasonable. *See Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 417 (9th Cir. 1997)).

### 1. Purposeful Availment

In discussing the specific jurisdiction test, the United States Supreme Court has long emphasized that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The world-wide reach of the Internet has complicated the definition of "conducting activities" within a state, and the development of the law concerning the permissible scope of personal jurisdiction based on Internet use is in its early stages. The cases are scant; however, the Ninth Circuit recently addressed the purposeful availment aspect of personal jurisdiction in a case involving the Internet. *See Cybersell, Inc.*, 130 F.3d at 415.

In *Cybersell,* an Arizona corporation, Cybersell, Inc. ("Cybersell AZ"), held a registered servicemark for the name Cybersell. *Id.* A Florida corporation, Cybersell, Inc.

- 6 -

1 ("Cybersell FL"), created a website with the domain name cybsell.com. Additionally, it
2 posted "Cybersell" and "Welcome to Cybersell" at the top of its webpage. Cybersell AZ
3 claimed that Cybersell FL infringed its registered servicemark and brought an action in the
4 District Court of Arizona. *Id.* The court held that it could not exercise personal jurisdiction
5 over the defendant because maintaining a website accessible to anyone over the Internet is
6 not enough. *Id.* at 419-20. The court stated that there must be "something more" to "indicate
7 that the defendant purposefully (albeit electronically) directed his activity in a substantial
8 way to the forum state." *Id.* at 418.

9 In *Cybersell*, the Ninth Circuit adopted the sliding scale approach established in *Zippo*
10 *Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D.Pa. 1997). Personal
11 jurisdiction is "directly proportionate to the nature and quality of commercial activity"
12 conducted via the Internet. *Id.* A passive website with only posted information does not give
13 rise to personal jurisdiction; whereas personal jurisdiction is proper over a defendant
14 responsible for a fundamentally interactive website that generates contractual business
15 relationships. *Id.* Accordingly, the court properly exercised personal jurisdiction in
16 *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996) because the defendant, a Texas
17 resident who advertised his product through an Ohio computer information service, had taken
18 direct actions to create a business connection with Ohio. *Id.* at 1264.

19 Mesa characterizes http://dontflygo.com as an interactive, rather than passive, website.
20 (Opp. to Mot. to Dismiss, p. 6). Mesa argues that links inviting people to contact the site
21 with negative information about Mesa or to provide contributions supporting the site's cause,
22 and links that allow the purchase of anti-*go!* merchandise, establish the commercial,
23 interactive nature of the site. Uslan counters that the site is entirely passive. In fact,
24 http://dontflygo.com occupies a middle ground of interaction where "the exercise of
25 jurisdiction is determined by examining the level of interactivity and commercial nature of
26 the exchange of information that occurs on the Web site." *Zippo*, 952 F. Supp. at 1124. The
27 site's commercial activities are limited and do not rise to the level of the business relationship

28

1 found in *CompuServe*, but the potential for visitors' interaction exceeds *Cybersell*'s entirely
2 passive site.

3 Assessing personal jurisdiction over the person or persons responsible for the website
4 would require further analysis of the extent of the site's commercial connections with Arizona
5 residents and activities purposefully directed at the State. But because Mesa has failed to
6 present sufficient evidence that Uslan is responsible for the website or contributed to its
7 content, the Court need not engage in that further analysis.

8 Uslan's membership in H.E.R.O., established by a news article that thus far has been
9 Mesa's only means to ascertain a named party, is not sufficient to show that Uslan purposely
10 directed his alleged actions at the forum state. While Uslan may have been identified as an
11 organizer of H.E.R.O., he does not manage or control the content of the website, nor has
12 Uslan derived economic benefit from the sale of products through the website.
13 (Supplemental Declaration of Michael Uslan "Supp. Uslan" at ¶¶ 2-3). Uslan's failure to
14 define "control" in his declaration or to deny that he is responsible for some or all of the
15 website's content does not fulfill Mesa's burden of producing evidence that links Uslan to the
16 allegedly defamatory website. Asserting that Uslan has not denied specific facts does not
17 provide affirmative evidence that Mesa's allegations are substantiated. While the Court
18 resolves conflicting statements in the plaintiff's favor, there is not a conflict here, since Mesa
19 has not offered any evidence to contradict Uslan's declaration. *Warfield v. Gardner*, 346 F.
20 Supp. 2d 1033, 1038 (D. Ariz. 2004).

21 Mesa attempts to fulfill its burden of establishing specific jurisdiction over Uslan
22 through an article that associates him with H.E.R.O. Mesa then relies on H.E.R.O.'s
23 affiliation with the website to hold Uslan responsible for its content, but fails to provide
24 evidence of a direct link between Uslan and the site. Uslan does not own or operate the
25 allegedly defamatory site, nor does he have any other ties to Arizona that would lead him to
26 reasonably anticipate being haled into court in Arizona. *Burger King Corp. v. Rudzewicz*,
27 471 U.S. at 474. "'[E]ven a single act can support jurisdiction,' so long as it creates a
28 'substantial connection' with the forum, as opposed to an 'attenuated affiliation.'" *Red Wing*

*Shoe Co.*, 148 F.3d at 1359 (quoting *Burger King*, 471 U.S. at 475 & n.18).  Mesa's evidence of Uslan's membership in H.E.R.O. demonstrates a loose affiliation with the website, at best. But Mesa fails to establish a substantial connection between Uslan and the allegedly defamatory site that would subject him to personal jurisdiction in Arizona.

### 2. The Effects Test

Mesa argues that the intended effects of Uslan's non-forum conduct was purposefully directed at and caused harm in the forum state, which gives the court personal jurisdiction over Uslan according to *Calder v. Jones*, 465 U.S. 783, 788-90 (1984).[3]  Under *Calder*, personal jurisdiction can be based upon: "(1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered, and which the defendant knows is likely to be suffered, in the forum state."  *Core-Vent*, 11 F.3d at 1486 (9th Cir. 1995).

Mesa's use of *Calder's* effects test fails since Mesa offers no evidence that Uslan directed an intentional tort towards the forum state through the website.  Uslan was not responsible for any intentional torts that stemmed from the website's content.  Without any direct connection that establishes Uslan's ownership of the website or contribution to the website's allegedly defamatory accusations, Mesa cannot demonstrate that Uslan performed an intentional action expressly aimed at Arizona.

Furthermore, Mesa has not shown that it suffered the brunt of its harm in Arizona. In *Cybersell*, the Court held that the effects test does not apply "with the same force" to a corporation as "to an individual, because a corporation 'does not suffer harm in a particular geographic location in the same sense that an individual does.'"  *Cybersell* 130 F.3d at 420 (quoting *Core-Vent*, 11 F.3d at 1486).  While the website stated that Mesa was based in Arizona, and therefore the site's owners were aware harm might be felt in this state, Mesa

---

[3]*Cf. Sinatra v. Nat'l Enquirer*, 854 F.2d 1191, 1195 (9th Cir. 1988) ("[T]he decisions of this court have interpreted the holdings of *Calder* and *Burger King* as modifying the purposeful availment rubric to allow 'the exercise of jurisdiction over a defendant whose only 'contact' with the forum is the 'purposeful direction' of a foreign act having effect in the forum state.'" ) (quoting *Haisten*, 784 F.2d at 1397).

- 9 -

1  does not offer evidence to suggest that Arizona residents, other than a paralegal for Mesa's
2  counsel, visited the website, or financially supported H.E.R.O.'s efforts. Though 40% of
3  Mesa employees reside in Arizona, Mesa has not provided evidence of any ramifications
4  from the website felt in Arizona or in any state. Mesa provides the number of Arizona
5  residents traveling on Mesa Air in a given year, but without comparing this number to other
6  states, this number is not instructive. Moreover, there is no indication that those responsible
7  for the website's content knew of the number of Mesa's Arizona patrons or directed their
8  actions towards preventing Arizona passengers from flying on Mesa or *go!*. In fact, the
9  website's content would be most relevant to Hawaiian residents traveling inter-island or those
10 affiliated with local airlines, since the website aimed to protect the smaller local airlines to
11 Mesa's detriment. In *Calder*, the forum state was the focal point of both the defendant's
12 contacts and the harm suffered. 465 U.S. at 789. While Mesa's principal place of business
13 is Arizona, and the company would therefore likely feel effects in this state, the website's
14 content was specifically aimed at Mesa's activities in Hawaii rather than Arizona.

15  Uslan is merely a representative for H.E.R.O. without a substantiated connection to
16 ownership or management of the website or its content. Uslan has no individual contacts
17 with Arizona or control over the website's content that Mesa can prove had an intentionally
18 adverse effect directed at Arizona. The Court determines that Uslan did not "expressly aim"
19 tortious conduct at Arizona, and thus did not purposely avail himself of the benefits and
20 protections of Arizona.

21  Because Mesa has not demonstrated that Uslan has "purposefully availed" himself of
22 the privilege of conducting business in Arizona, the Court lacks personal jurisdiction over
23 Uslan.

24 **II. Discovery**

25  In the alternative, Mesa requests that the Court permit a four-month discovery period
26 for Uslan, Domains by Proxy, and unknown contributors to http://dontflygo.com. Through
27 such discovery, Mesa seeks to determine the extent of contacts between Arizona and the
28

website's creators. Specifically, Mesa seeks the identity or identities of the person or persons responsible for the allegedly defamatory website content.

Because no statutory method for resolving the personal jurisdiction issue exists, the district court determines the method of its resolution. *See Data Disc*, 557 F.2d at 1285 (citing *Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939)). A district court may allow discovery to help it determine whether it has personal jurisdiction over a defendant. *See id.* at 1285 n.1 (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)). This opportunity for jurisdictional discovery requires a foundational basis beyond mere speculation: "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006)(citing *Terracom*, 49 F.3d at 562).

Mesa fails to demonstrate how additional discovery, regardless of its location or convenience to Uslan, would contradict Uslan's declaration that he is not responsible for the website's operation or content. Mesa attempts to parlay a news article identifying Uslan's affiliation with H.E.R.O. into a means of discovering the names and agencies of those actually responsible for the website. Mesa bases its discovery request on nothing more than Uslan's attenuated affiliation with the website and unsupported allegations that contradict Uslan's specific denials. The Court therefore will not permit limited discovery on personal jurisdiction.

///
///
///
///
///

Accordingly,

**IT IS ORDERED** Granting Defendant Uslan's Motion to Dismiss for Lack of Jurisdiction (Doc. #11).

1 **IT IS FURTHER ORDERED** Denying Plaintiff's Motion for Leave to File Surreply (Doc. #21).

DATED this 25th day of June, 2007.

James A. Teilborg
United States District Judge